# URIAH WALL v. ISAAC WALL.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 2, 1888—Decided January 28, 1889.

123 515
139 141
123        545
21 SC ⁵429
21 SC ⁶429
123        545
24 SC ¹393
25 SC ¹601
123        545
f 33 SC ³573

1. A judgment or decree in a judicial proceeding, the record of which discloses on its face a want of jurisdiction either of the person or of the subject-matter, is subject to impeachment for invalidity at any time and in any court where it is pleaded.

2. The general proposition that a decree of probate by a register of wills, if unappealed from for five years, is conclusive as to a devise of real estate, must be understood as qualified by the same conditions that qualify the conclusiveness of judgments at law.

3. The jurisdiction of the register of wills is conferred by statute with plainly prescribed limitations, within which his decrees are conclusive, while outside of them he is without authority to make a decree, and his decree if made is a nullity.

4. A testamentary writing presented to be admitted to probate which does not meet the requirements of § 6, act of April 8, 1833, P. L. 249, is not a will and the decree of a register admitting it to probate is ineffective to make a will out of it.

5. When the record of a probate disclosed that a testamentary paper was prepared by a scrivener from directions given, but that the alleged testator had died without seeing the will or knowing its contents, and that the paper was presented for probate unexecuted, the register was without jurisdiction and his decree admitting the writing to probate as a will was void.

6. The proofs produced, instead of showing that the paper as prepared had been approved by the executor but its execution prevented by the extremity of his last sickness, showed clearly that he had not examined it and could not have intended its execution, because he was dead when it was finished: The register was therefore without jurisdiction.

Before Gordon, C. J., Sterrett, Green, Clark, Williams and Hand, JJ.; Paxson, J., absent.

No. 91 October Term 1888, Sup. Ct.; court below, No. 250 June Term 1887, C. P. No. 1.

On April 23, 1887, an ejectment was brought by Isaac Wall against Uriah Wall, to recover a tract of land containing 29 acres and 135 perches, in Forward township. Issue.

Statement of Facts.

At the trial on March 27, 1888, the facts material to this issue were shown to be as follows:

A tract, of which the land in dispute was a part, was owned by Isaac Wall, Sr., who died on December 24, 1834, leaving to survive him two sons, John Wall and Maxwell Wall, and three daughters, Rebecca, Margaret and Araminta Wall, and on January 17, 1835, a testamentary paper, hereinafter quoted, dated December 24, 1834, was admitted to probate as the last will and testament of the deceased.

After the death of his father, John Wall, the elder son, went into possession of the land in dispute and continued therein, as was claimed, until his death on May 18, 1869. Upon the death of John Wall, his son, Uriah, the defendant in this suit, went into possession of the property and retained it thereafter, as was claimed, until the suit.

Maxwell Wall died in 1877, leaving a son, Isaac Wall, who, denying that the character and incidents of the possession of John Wall and his son, Uriah Wall, were such as gave title, brought this action.

The plaintiff, in the outset of his case in chief, made the following offer:

Plaintiff's counsel offer in evidence the will of Isaac Wall, the grandfather of the defendant, dated December 24, 1834, probated January 17, 1835, recorded in will book 4, page 185, and in connection therewith, the record made by the register in will book 4, page 185, as follows:

In the name of God, amen. I, Isaac Wall, of Elizabeth township, Allegheny county and state of Pennsylvania, being weak of body, but of sound mind and judgment (blessed be God for His mercies) do make this, my last will and testament.

First. I commend my soul to God, who gave it, and my body to my friends to be buried in a Christian manner; and as to such worldly goods as it hath pleased God to bestow upon me I do give and bequeath in the following manner, namely:

I do give and bequeath to my loving son, Maxwell Wall, all my property and effects that I possess, both real and personal property, comprising the farm that I now reside upon (situated in the county and state aforesaid), with all the personal property. And further, that the aforesaid Maxwell Wall shall pay to my two daughters, Margaret Wall and Araminta Wall, one-

third of all that is raised on the aforesaid farm yearly until the payments shall amount to the sum of four hundred dollars. And the aforesaid Maxwell Wall shall likewise pay to my son, John Wall, in one year from my decease, the sum of one hundred dollars.

And I also appoint my brother, James Wall, and Joshua Wilson to be my executors of this my last will and testament.

Allegheny county, Elizabeth township, Dec. 24, A. D. 1834.

Witness present.

JOHN CANDERS.

JOSHUA WILSON.

N. B.—The aforesaid Margaret and Araminta Wall shall have equal portions, viz.: Two hundred dollars each, and in case of the decease of either of these, the survivor shall receive the deceased's portion.

ALLEGHENY COUNTY, ss.

Be it remembered that on the 17th day of January, A. D. 1835, personally appeared before me, John M. Snowden, Register, &c., in and for said county, John Canders and Joshua Wilson, the two subscribing witnesses to the foregoing will, who were solemnly sworn and John Canders on his said oath declared that:

On the 24th of December, 1834, he was called upon by the testator, Isaac Wall, to write his last will and testament; that the testator stated to him all the items contained in the foregoing will, except the legacy to John Wall; that deponent proceeded to take notes thereof, and Joshua Wilson, the other deponent, was requested to take from the testator the remainder of his will and report the same to deponent to be noted; that Wilson did so and reported to deponent the legacy to John Wall and the appointment of executors, which were accordingly noted; that from these notes the foregoing will was drawn up, but that the deceased died before he signed and sealed the same; and further, that the deceased was at the time of so making his will of sound and disposing mind and memory, according to the best of deponent's knowledge and belief.

Joshua Wilson, on his said oath, says that on the 24th of December, A. D. 1834, he was requested to go to the bedside of the testator and hear the testator declare the particulars of

Statement of Facts.

his last will and testament and report the same to John Canders, who was then in the room taking notes thereof; that the deceased related to him all the particulars contained in the within will and particularly the legacy to his son John and the appointment of his executors; that deponent reported these particulars to Mr. Canders to be noted and that before the will was finally drawn up for his signature and seal the testator died; that the preceding instrument of writing contains all the particulars of his will as related to this deponent by the testator, and that, to the best of deponent's knowledge and belief, the testator was at the time of making thereof of sound and disposing mind and memory.

Given under my hand, the date aforesaid,

JOHN M. SNOWDEN,
Register.

Be it remembered that on the 17th day of January, A. D. 1835 letters testamentary with the will annexed upon the estate of Isaac Wall, late of Elizabeth township, deceased, were granted to Joshua Wilson, one of the executors in said will named, who was solemnly sworn well and truly to administer the goods and chattels, rights and credits which were of the said deceased; to make a true inventory and appraisement of the personal property of the said deceased and return same into the register's office within one month from this date; to settle the account of their administration within one year or when thereunto legally required, and to comply with the provisions of an act of assembly of this commonwealth entitled "An act relating to collateral inheritances."

Given under my hand, the date aforesaid,

JOHN M. SNOWDEN,
Recorded January 17, 1835.                    Register.

To the above offer defendant's counsel objected: (1) Because the paper offered as the will of Isaac Wall is not signed. (2) Because it is not properly executed. (3) Because it is not a will. (4) Because it is incompetent; and, inasmuch as the record made by the register when the paper was offered for probate is made part of plaintiff's offer, it is further objected to because the paper now offered as the will of Isaac Wall was not even reduced to writing during the lifetime of Isaac Wall.

Arguments.

By the court: Objections overruled and offer admitted.[1]

At the close of the testimony, the court, SLAGLE, J., in the charge to the jury answered certain of the points presented by the defendant as follows, to wit:

1. The plaintiff, to recover, must recover on the strength of his own title, not on the weakness of his adversary's.

Answer: Affirmed.

2. Under the uncontradicted evidence, the only claim of title plaintiff makes to the land in controversy is through and under what is mentioned as the will of Isaac Wall, his grandfather. The unsigned paper offered as the will of Isaac Wall is not, however, under the uncontradicted evidence in this case, the will of Isaac Wall, and no will of Isaac Wall having been offered in evidence, plaintiff cannot recover and the verdict must be for the defendant.

Answer: Refused.[2]

3. The unsigned paper offered as the will of Isaac Wall, under the uncontradicted evidence in this case, is not the will of Isaac Wall, but is invalid and of no effect, and the admission, or so-called admission, to probate of such paper by the register does not make it a will. The register had no jurisdiction to admit to probate said paper as and for the will of Isaac Wall.

Answer: Refused.[3]

4. So far as the testimony—uncontradicted testimony—in this case goes, Isaac Wall died intestate; plaintiff cannot recover and the verdict must be for the defendant.

Answer: Refused.[4]

The jury returned a verdict for the plaintiff. Judgment having been entered, the defendant took this writ, assigning as error:

1. The admission of the plaintiff's offer.[1]

2–4. The answers to the defendant's points.[2 to 4]

*Mr. George C. Wilson,* for the plaintiff in error:

1. Under § 7, act of April 22, 1856, P. L. 533, the probate by the register of the proper county of any will devising real estate is conclusive as to realty, after five years have passed

without contest; but it is scarcely necessary to say that under the wills act of April 8, 1833, § 6, P. L. 249, there can be no such thing as a will devising land unless it have been reduced to writing in the lifetime of the person proposing to make the devise. Much more than this must be shown, to meet the requirements of the section: Aurand v. Wilt, 9 Pa. 54; but the existence of the writing in the lifetime of the alleged testator is of vital importance. Was there any probate of the alleged will of Isaac Wall, Sr.? It is, indeed, said in Holliday v. Ward, 19 Pa. 490, that it is not usual to enter a formal decree of probate on the record, and that it will or may be presumed. But it is worthy of special remark that it does not appear in that case that the existence of a decree of probate was questioned. Here the fact was and is expressly challenged. Is this case, then, fairly within the act of 1856? The purpose of that act was to quiet titles, not to disturb them.

2. But if the record admitted imports a decree of probate, then its validity is denied as wholly unauthorized. All acts of ministers of justice without authority are a nullity: Case of the Marshalsea, 10 Rep. 76; and want of jurisdiction, either as to the subject-matter or the person, or, in proceedings in rem, as to the thing, may always be shown in any tribunal in which the former judgment is relied upon: Thompson v. Whitman, 18 Wall. 457. Furthermore, when a court or an officer exercises a limited and special jurisdiction, all the facts necessary to support that jurisdiction, in any particular case, must appear of record, otherwise the proceedings are not merely voidable, but absolutely void: Camp v. Wood, 10 W. 118; Thatcher v. Powell, 6 Wheat. 119; Torrance v. Torrance, 53 Pa. 505. And "the proceedings in probate courts are not according to the course of the common law; their jurisdiction is special and limited:" Smith v. Rice, 11 Mass. 507, 510; 3 Redf. on Wills 56, et seq.; Devlin v. Commonwealth, 101 Pa. 273, 276; Griffith v. Frazier, 8 Cranch 9; Willard v. Wales, 2 Mass. 120; Crosby v. Leavitt, 4 Allen 410; Holyoke v. Haskins, 5 Pick. 20. It is never too late to attack a judgment for want of jurisdiction: Fowler v. Eddy, 110 Pa. 117.

3. The case now before the court is not the case of a probate allowed on the testimony of an incompetent witness, or on insufficient evidence; and hence the decision in Holliday v.

Ward, 19 Pa. 490, and other like cases has no application. It may be admitted that if a case should arise in which there was an entire absence of recorded or noted proof, after the lapse of five years from the date of probate it would perhaps be conclusively presumed that the register had acted upon due proof: Cochran v. Young, 104 Pa. 333; Broe v. Boyle, 108 Pa. 76. But the distinguishing feature of this case is, that the recorded and uncontradicted proof establishes conclusively that the instrument here is not the will of Isaac Wall, Sr.; that the paper did not exist in his lifetime, but was prepared after he died. "Probating does not create a will. It cannot make a will out of a writing which was not a will before:" Bowlby v. Thunder, 105 Pa. 173, 179.

*Mr. Homer H. Swaney* (with him *Mr. W. C. Erskine*), for the defendant in error:

1. Was there a probate of the will of Isaac Wall, Sr.? We submit there was. The register could not have made the record in the will book, without probate of the will. Probate will be presumed from the issuing of letters testamentary, or perhaps from any other act of the register, which he would have no legal right to make in a case where proof of the will failed: Holliday v. Ward, 19 Pa. 490. This decision was rendered before the act of April 22, 1856, P. L. 533, but it has never been overruled. After five years, without appeal from the probate of a will, the probate even if defective would be sufficient and conclusive: Kenyon v. Stewart, 44 Pa. 179. When the register admits an instrument to probate, he acts judicially, and even in the absence of recorded proof the probate is valid. After five years have elapsed, the register is conclusively presumed to have received the will and made the probate on sufficient and satisfactory evidence: Broe v. Boyle, 108 Pa. 76; Cochran v. Young, 104 Pa. 333.

2. The probate of the will was valid and within the power of the register: (*a*) Because the instrument has all the requisites of a will, both in form and obvious purposes. A will may be in any form, if the obvious purpose is not to take effect until after the death of the testator: Frew v. Clarke, 80 Pa. 170. This will is in legal form lacking only the signature of the testator. (*b*) Because, the legality of the instrument de-

pends upon the law at the time of its execution. Section 6, act of April 8, 1833, P. L. 249, was then in force, providing: " Every will shall be in writing, and unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof," etc. (c) Because it was the duty of the register to decide whether the instrument met the requirements of the act, and he did decide. So much weight is given to the decision of the register, that the validity of the will is inferred from the decision itself, not from the evidence on which that decision is based: McCay v. Clayton, 119 Pa. 133 ; Woodruff v. Taylor, 20 Vt. 65 ; Whicker v. Hume, 7 H. L. 124 ; Freeman on Judgments, 608.

3. It was therefore not error for the court below to admit the will of Isaac Wall, Sr., in evidence, with the record of probate ; (a) Because the register's judgment in favor of the will was a judicial act: Cochran v. Young, 104 Pa. 333 ; Broe v. Boyle, 108 Pa. 76 ; Holliday v. Ward, 19 Pa. 490 ; Wilson v. Gaston, 92 Pa. 207 ; McCort's App., 98 Pa. 33. (b) The probate is evidence of the validity of the will; cases just cited and Kenyon v. Stewart, 44 Pa. 179. It is useless to repeat the many cases where the conclusiveness of the probate unappealed from for five years has been established. The act of 1856 has created a rule of evidence in accordance with which the court below acted, and in perfect accord as well with the decisions of this court since 1856, in admitting the will in evidence.

OPINION, MR. JUSTICE WILLIAMS :

The general rule on which the court below rested its ruling in this case is well settled. A decree of probate made by the register of wills is a judicial decree, and after the lapse of five years without appeal it is conclusive as to the real estate disposed of by it. This rule has been recognized and applied in many cases, among which are Holliday v. Ward, 19 Pa. 485 ; Cochran v. Young, 104 Pa. 333 ; McCay v. Clayton, 119 Pa. 133.

But the general proposition thus affirmed must be understood as qualified by the same considerations that qualify the conclusiveness of judgments at law. Of these the most obvious is that which relates to the jurisdiction of the court over the subject-matter and the persons affected by the judgment.

If the court has no jurisdiction, it is of no consequence that the proceedings have been formally conducted, for they are coram non judice.  A judgment rendered by a justice of the peace in a cause over which he has no jurisdiction is void, notwithstanding service may have been regularly made on the defendant, and he may have failed to appeal or take a certiorari within the time prescribed by law.  A judgment rendered in the Court of Quarter Sessions in a proceeding exclusively within the jurisdiction of the Common Pleas, and vice versa, is void for want of jurisdiction in the court rendering the judgment.  So, although the court may have jurisdiction of the subject-matter, yet if there be no service, actual or constructive, on the defendant, the judgment is void for want of jurisdiction over the person to be affected.  If such want of jurisdiction appear upon the record, it can be taken advantage of at any time and in any court where the conclusiveness of the judgment is the subject of judicial inquiry.  The reason for this is found in the fact that the record of the judgment bears on its face the proof of its illegality and shows the want of power in the tribunal to render it.  When it is offered as a conclusive adjudication between the parties, an inspection shows that it is not, because the court had no power to make an adjudication.

In the case now under consideration the jurisdiction of the register is conferred by statute, and the limitations within which it is to be exercised are very plainly prescribed.  Within these limits his decrees are conclusive.  Outside of them he is without any authority to make a decree, and his decree if made is a nullity.

The act of 1833 provides that "every will shall be in writing, and, unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof, or by some person in his presence and by his express direction; and in all cases shall be proved by the oaths or affirmations of two or more competent witnesses, otherwise said will shall be of no effect."  A writing that does not meet these requirements is not a will and the register cannot make a will out of it.  If a deed in the usual form should be presented to the register as the will of the grantor, and proof should be made by two witnesses showing its execution and

delivery as a deed, a decree of probate resting on such an in-
strument, and such proofs spread upon the record, could not
change the character of the instrument or conclude any one
interested.   This was substantially ruled in Bowlby v. Thunder,
105 Pa. 173.   The action in that case, as in this, was ejectment.
The register had probated two papers which were attached to
a formal will as though they had been part of it.   There had
been no appeal from the decree and more than five years had
elapsed.   The party claiming under the will alleged that the
decree of probate was conclusive as to the testamentary char-
acter of the attached papers.   The court below, however, held
otherwise, and this court affirmed its action, giving as a reason
that "probating does not make a will."   The ground on which
the decision in Bowlby v. Thunder stands, is that the register
had no jurisdiction over the writings attached to the will.
They were precatory or advisory, and were for the guidance of
the executor.   Their character and his want of jurisdiction
were apparent on the face of his record, and his decree was an
absolute nullity.

The case at bar is still stronger.   Isaac Wall, realizing the
dangerous character of his sickness, desired to make a will and
gave directions to a scrivener for its preparation.   Before the
writing was ready for his examination he died.   He never saw
the will which had been prepared for him nor knew its con-
tents.   It was presented to the register for probate in the same
condition in which it left the hands of the scrivener, an unex-
ecuted writing.   This was enough to prevent its probate until
the want of execution was accounted for in accordance with
the act of 1833.   The proofs produced instead of showing that
the paper was approved by the testator, but its execution pre-
vented by the extremity of his last sickness, showed very
clearly that he had not examined it and could not have in-
tended its execution, because he was dead when it was finished.
The register was therefore without jurisdiction.   The writing
produced was not signed nor was the failure to sign accounted
for, as the act of 1833 required in order to entitle the writing
to probate.

In Aurand v. Wilt, 9 Pa. 54, the action was ejectment, and
the validity of the will of Peters was the controlling question.
He was living when his will was written and brought to him,

but he was unable to comprehend what was said about it and died without executing it. It was held that the will was not entitled to probate, and ROGERS, J., delivering the opinion of this court said: "An opportunity must be given to have the will read and explained to him (the testator), which cannot be if before it is completed and ready for signing he becomes incapable of understanding and comprehending the contents. If at the time or before it is completed he either dies or ceases to be able to act understandingly, it cannot be admitted to probate."

Several cases have been cited which are thought to hold a different doctrine, but an examination will show that they do not. They are cases in which a will purporting to be signed by the testator was presented for probate. The fact that the will was executed gave the register jurisdiction to inquire into the manner of its execution, and the mental condition of the testator. Where he has jurisdiction, a decree, regular in form, will be aided by the presumption that all things necessary to be done have been rightly done. Presumptions may be resorted to in aid of a decree otherwise regular. But jurisdiction will not be presumed when the record shows the want of it. In such case the decree is a nullity.

> Judgment reversed, and a venire facias de novo awarded.